UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| **DAVID KOLTES,** an individual<br><br>Plaintiff,<br><br>v.<br><br>**THE AUTO CLUB GROUP d/b/a AAA NEBRASKA.**, a Nebraska Non Profit corporation<br><br>Defendant. | Case No. _____<br><br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

## INTRODUCTION

1. David Koltes ("Mr. Koltes ") worked as a Senior Processing Specialist at The Auto Club Group d/b/a AAA Nebraska ("AAA") in Omaha, Nebraska. Mr. Koltes. started working at AAA on January 1, 2006 and continued until his termination on April 8, 2019

2. AAA's treatment of Mr. Koltes started to deteriorate starting in November 2018, mere months before his termination and continued to deteriorate until AAA Nebraska unjustifiably terminated him.. Mr. Koltes first complained to AAA management about religious discrimination by his supervisor after his co-workers complained that Mr. Koltes was praying at his desk.

3. When Mr. Koltes complained about his treatment, AAA placed him on administrative leave pending a medical evaluation. AAA thereafter required Mr. Koltes to undergo a medical evaluation demonstrating that he was fit to perform his duties as a

Processing Associate, a position he had held and been performing at a highly successful level for several years.

4. AAA placed Mr. Koltes on administrative leave after a co-worker complained to AAA management that Mr. Koltes was disrupting the workplace. Specifically, the co-worker complained that while Mr. Koltes was working at his assigned desk, he was praying.

**VENUE & JURISDICTION**

5. This matter arises under federal and state law. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1331 based on Mr. Koltes' federal claims in this Complaint. This Court has supplemental jurisdiction of the Nebraska state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this district pursuant to 28 U.S.C § 1391(b)(2), because the acts forming the basis for this Complaint were orchestrated from, planned in, and conducted in this District.

7. Mr. Koltes pursued his claims through the applicable state and federal administrative processes. He now has received right to sue letters from both the state and federal agencies, which are attached as Exhibit A (NEOC right to sue letter ) and Exhibit B (EEOC right to sue letter), and are incorporated here by this reference as if fully set forth.

**PARTIES**

8. Mr. Koltes is a citizen and resident of Omaha, Nebraska. He is a Caucasian male. He was employed by AAA at its Omaha facility. Beginning in January 2006 until his termination in April 2019.

9. AAA is a trade name by which The Auto Club Group, a Michigan nonprofit corporation, does business in Nebraska. Mr. Koltes worked from the AAA Nebraska office located at 815 N. 96th Street, Omaha, NE 68114.

## AAA's DISCRIMINATION & RETALIATION AGAINST MR. KOLTES

10. For more than a decade prior to his termination, Mr. Koltes worked at AAA Nebraska in its claim processing department. He performed his job well, never having been disciplined or receiving a negative performance evaluation.

11. Mr. Koltes' personal life through 2018 had been difficult, at best. Mr. Koltes' year was personally upsetting due to the fact that five (5) of his family members died during the preceding year, including his natural mother and his brother. Mr. Koltes took time off to grieve, but while he was at home, mourning his losses, a supervisor sent Mr. Koltes a letter via overnight delivery, advising him of the limited time available for bereavement leave Nonetheless, Mr. Kolte's took an additional day off to purchase an urn for his brothers' ashes.

12. In November 2018, when Mr. Koltes returned to the AA Nebraska workplace, one of his co-workers complained to AAA Nebraska management that Mr. Koltes was praying at his desk and claimed that Mr. Koltes was disrupting the workplace by sitting at his desk and engaging in a prayer. Mr. Koltes was performing his assigned job, working, when he briefly engaged in prayer at his desk. As part of his prayer, Mr. Koltes stated aloud that he "rebuked Satan." Mr. Koltes tried to be conscientious about intruding on his co-workers' office space because one co-worker complained that he was praying at his desk. Mr. Koltes spoke to each of his co-workers about having prayed at his desk. He learned from his co-workers that his praying at his desk did not

3

make his co-workers uncomfortable, and at least the co-workers stated, "everyone has their thing." Mr. Koltes also spoke to the AAA Nebraska's Director of Operations, who confirmed in casual conversation that he was "OK" with Mr. Koltes' praying at his desk.

13. Nonetheless, AAA Nebraska acted on the co-worker's complaint. AAA Nebraska management counseled Mr. Koltes on praying at his desk, telling him he no longer was permitted to pray at his desk, AAA Nebraska management supervisor, Kelly Meola, then took AAA Nebraska's actions a step farther.

   a. Kelly Meola placed Mr. Koltes on administrative leave pending a medical evaluation to determine if he was mentally fit for duty because he was engaged in prayer at his desk.

   b. AAA Nebraska required Mr. Koltes to see a corporate psychologist, Dr. Joe LNU, who administered the Minnesota Multiphasic Personality Inventory. ("MMPI") . The psychologist required Mr. Koltes to sign a document which stated, in part, that it was AAA proprietary information and could not be copied. The document included a clause stating that Mr. Koltes could not sue AAA Nebraska

   c. AAA Nebraska then required that Mr. Koltes see its corporate medical provider, Dr. Michael Sedlacek, Psychiatric Services, PC, so Dr. Sedlacek could conduct a mental health evaluation of Mr. Koltes. Dr. Sedlacek required that Mr. Koltes again sign n documents containing statement prohibiting Mr. Koltes from receiving a copy, that the documents was proprietary AA Nebraska

4

information, of which Mr. Koltes could not get a copy, and prohibiting Mr. Koltes from filing any action against AAA.

d. When Mr. Koltes discovered the additional information prohibiting him from pursuing AAA in court, Mr. Koltes revoked his initial permission for Dr. Sedlacek to treat him because he did not agree with these terms.

e. Thereafter, Mr. Koltes contacted Dr Sedlacek who informed him initially , "You are fine go back to work." Dr. Sedlacek, however, apparently changed his mind after reading the AAA phycologist's opinion which remained undisclosed to Mr. Koltes. By this time, Mr. Koltes lost all confidence in Dr. Sedlacek and returned to see Barbara A. Cole, a counselor at Great Oaks Counseling, LLC, 13906 Gold Circle, Omaha, NE 68144. Mr. Koltes had seeing Ms. Cole during the preceding two (2) years while he suffered through the during the onslaught of deaths in his family.

14. In February 2019, Mr. Koltes contacted AAA Nebraska to inform his supervisor he was ready to return to work. Mr. Koltes learned then for the first time he needed to provide AAA Nebraska with a return to work authorization letter. Mr. Koltes requested that Ms. Cole provide a return to work letter so he could return to work at AAA Nebraska

15. Accordingly, Mr. Koltes provided AAA Nebraska with a letter from Barbara A. Cole, who sent a letter to AA Nebraska clearing Mr. Koltes to return to work::

> "[I]n my opinion, he is ready to come back to work and is able and
> able to do his job. . . . I can say that from sessions with Mr. Koltes,
> I have no reason to believe he is not ready or capable to return to
> work."

16. AA Nebraska supervisor Meola, without regard for Mr. Koltes' HIPAA protections, called Mrs. Cole to find information about Mr. Koltes' mental and physical health.

17. Next, after receiving Ms. Cole's letter, calling Ms. Cole, and receiving Mr. Koltes' request to return to work, Kelly Meola wrote a letter to Mr. Koltes, in which she informed him he was terminated. Meola told Mr. Koltes in her letter that he

> could not return to work until [he] received treatment from a medical
> provider qualified to treat [his] medical condition as diagnosed in the
> evaluation, and [h]e had to be in full compliance with the medical
> provider's treatment plan.

17. Meola's letter concluded with a warning to Mr. Koltes that he had until April 5, 2019 to provide written verification that he had begun medical treatment for the issues identified in AAA Nebraska's December 2018 fitness for duty evaluation. If he failed to do so, Meola's letter informed Mr. Koltes he would be terminated effective April 6, 2019..

18. Mr. Koltes informed Dr. Sedlacek and AAA Nebraska that he was being treated by Barbara A. Cole, of Great Oaks Counseling LLC.

19. Mr. Koltes 's employment, and his success as an AAA Nebraska employee were disregarded based on his co-worker's complaint that he was praying at his desk. Rather than working with Mr. Koltes, AAA Nebraska regarded him as if he were disabled because he was praying at his desk and deemed him incapable of doing his assigned job – despite the fact that his performance was never questioned or determined to anything but satisfactory and above average by AAA Nebraska. . Mr. Koltes was instructed to have

a mental health evaluation, despite having been cleared by the mental health provide who regularly treat him.  During the entire process involving Mr. Koltes and the  prayer in which he engaged at his desk, AAA Nebraska placed Mr. Koltes on administrative leave, and he was not allowed to do his regularly assigned job..

## DISCRIMINATION AND RETALIATION UNDER STATE AND FEDERAL LAW

### FIRST CLAIM

**NEBRASKA AAA VIOLATED STATE & FEDERAL LAW
BY REGARDING DAVID KOLTES AS DISABLED**
Americans With Disabilities Act Of 1990
42 U.S.C. § 12101 et seq.
ADA Amendments Act of 2008,
NFEPA, Neb. Rev. Stat. § 48-1104[1]

20. Mr. Koltes incorporates by reference paragraphs 1-19 , as if fully set forth.

21. Where, as here, a former employee alleges discrimination because an employer regards that  employee as disabled, the plaintiff must show that his employer subjected him to an adverse action "because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(1), (3)(A). The term physical or mental impairment means "physiological disorder or condition **** such as: neurological '. 28 C.F.R. § 36.105(b). *Fischer v. Minneapolis Public School,* 792 F.3d 985 (8th Cir. 2015).

---

[1] Disability discrimination claims under the NFEPA are analyzed under the same framework as claims brought under the ADA and need not be subjected to a separate analysis. *See Orr v. BNSF Rwy.* Co.

7

22.     In "regarded as" actions, the plaintiff must show that the employer "entertain[ed] misperceptions about the individual—it must [have] believe[d] either that one ha[d] limiting impairment that one d[id] not have or that one ha[d] a substantially limiting impairment when, in fact, the impairment [was] not so limiting." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999); *Simonson v. Trinity Regional Health System,* 336 F.3d 706 (8th Cir. 2003).

23.     In the instant case, Mr. Koltes was seeing a counselor of his own choosing for a condition that did not impair or impact Mr. Koltes' ability to return to work and perform his job.  Despite the authorization by the medical provider who had the longest treating relationship with Mr. Koltes, AAA Nebraska rejected Mr. Koltes' request that he be allowed to return to his job and continued to regard him as disabled, despite the medical authorization from his own medical provider that authorized his return to work.

24.     AAA Nebraska treated Mr. Koltes, a 13-year employee with an enviable employment record at AAA Nebraska, in a demeaning, disrespectful and intimidating fashion. He had no physical or mental condition that affected his ability to perform his sedentary desk job.  Mr. Koltes provided a medical statement declaring him cleared to return to work from his personal treating medical mental health profession.  Despite providing documentation to AAA Nebraska that Mr. Koltes was being treated and that he was capable of return to work,  AAA continued to regard Mr. Koltes as disabled, suspending him, and then proceeded to terminate Mr. Koltes when he continued to seek counseling from a professional of his own choosing.  AAA Nebraska did not regard or treat its other employees in this fashion.

WHEREFORE, Mr. Koltes requests judgment ordering an award of damages pursuant to 42 U.S.C. § 12102(1). and Neb. Rev. Stat. § 48-1119(4) based on AAA Nebraska's discriminatory terms and conditions of employment, based suspension and termination due to AAA Nebraska having regarded him as disabled.

## SECOND CLAIM

### RELIGIOUS DISCRIMINATION BY AAA IN VIOLATION OF TITLE VII & NEBRASKA FEPA
### (0      U.S.C. § 2000e-2; Neb. Rev. Stat. § 48-1101 *et seq.*)

25. Mr. Koltes incorporates by reference paragraphs 1-24, inclusive, as if fully set forth.

26. When Mr. Koltes engaged in a short prayer at his desk, he was in his own work space, sitting at his own desk where he performed his regularly assigned duties. . He did not need a separate space or additional time away from his work duties to pray.

27. Mr. Koltes did not ask for special treatment or relief from his job responsibilities. He simply wanted to able to sit at his desk and continue to work while having the opportunity to momentarily engage in prayer. He did not want and did not ask others to join him.

28. Mr. Koltes understands AAA Nebraska is a not a religion-based organization. Mr. Koltes simply wanted to be able to sit at his desk and engage in prayer if he believed it was necessary at a time when his work load would allow him to engage in a short prayer.

29. AAA Nebraska allows its employees the opportunity to take short breaks from their assigned workload to engage in personal activities, including bathroom breaks, smoking breaks and personal telephone calls. Employees who engage in these

personal activities, other than prayer at their desks, are not placed on administrative leave, and are not subjected to fitness for duty examinations by Company-determined mental health or medical professionals. Mr. Koltes was singled out and treated differently because his short break was to engage in prayer.

30. After Mr. Koltes' co-worker complained about the Mr. Koltes' having engaged in prayer, AAA Nebraska reduced Mr. Koltes' hours, pay and responsibilities. He was placed on administrative leave and not allowed to perform his regular duties. .

31. In fact, AAA Nebraska went so far as treating Mr. Koltes' as being mentally impaired and/or disabled because he engaged in prayer at work. He was subjected to mental examinations and treated as disabled because he briefly prayed at his desk whereas other employees were routinely allowed to take breaks for visits to the restroom, or to smoke outside the building , or to get snacks/ and/or drink to eat and drink at their desks.

32. Ultimately AAA Nebraska terminated Mr. Koltes because of his religious activities, . *i.e.* he engaged in prayer at his desk in the workplace.

WHEREFORE, Mr. Koltes requests judgment ordering an award of damages pursuant to 42 U.S.C. § 12102(1). and Neb. Rev. Stat. § 48-1119(4) based on AAA Nebraska's discriminatory terms and conditions of employment, based suspension and termination due to AAA Nebraska having discriminated against him based on his religious practice of praying.

### THIRD CLAIM

### RETALIATION BY AAA – <br> IN VIOLATION OF TITLE VII & NEBRASKA FEPA <br> (42 U.S.C. § 2000E-2; Neb. Rev. Stat. § 48-1101 *et seq.*)

33. Mr. Koltes incorporates by reference paragraphs 1-32, inclusive, as if fully set forth.

34. Mr. Koltes reacted to the complaint he learned was lodged by a single co-worker. Mr. Koltes spoke to his other co-workers and was informed by each of them that they were not uncomfortable with the fact that he prayed at his desk.

35. After Mr. Koltes was told a co-worker had complained, he discretely canvassed his remaining co-workers and also discussed the issue with AAA Nebraska Director of Operations.

36. Despite receiving no negative reaction from any of the co-workers or the Director of Operations, and they all confirmed they had no issues with Mr. Koltes' prayer at his desk, AAA Nebraska management retaliated against Mr. Koltes and reacted to his actions raising the issue with his other co-workers and the Director of Operations.

37. Despite receiving no negative feedback or complaints from any individual with whom he spoke, AAA management supervisor Kelly Meola turned around and retaliated against Mr. Koltes by putting him on administrative leave and ultimately deciding thereafter to terminate him.

WHEREFORE, Mr. Koltes requests judgment ordering an award of damages pursuant to 42 U.S.C. § 12102(1). and Neb. Rev. Stat. § 48-1119(4) based on AAA Nebraska's retaliation against him for pursuing AAA Nebraska's treatment of him beyond his supervisor Kelly Meola, and which resulted in his suspension and ultimate termination.

## **REQUEST FOR RELIEF**

WHEREFORE, Mr. Koltes requests judgment in his favor and awarding:

1. Damages for Mr. Koltes' lost and future wages for taking employment actions against and ultimately terminating him;

2. Damages for Mr. Koltes 's emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

3. Damages for Mr. Koltes' out-of-pocket expenses for mental health treatment;

4. Punitive damages for AAA's knowing violation of federal discrimination laws;

5. Costs and attorney fees; as allowed by law, and

6. Such other and further relief as the Court deems appropriate.

**PLAINTIFF MAKES DEMAND FOR TRIAL BY JURY.**

                              DAVID KOLTES, Plaintiff,

                    By: /s/ Terry A. White
                        Terry A. White #18282
                    **CARLSON BURNETT LLP**
                  2002 Douglas Street, Suite 100
                  Omaha, NE 68102
                  Direct: (402) 682-8006
                  Main: (402) 934-5900
                  *Terry@CarlsonBurnett.com*
                  *Attorney for Plaintiff*